**LEX TECNICA, LTD.**
Adam R. Knecht, Esq.
Nevada Bar No. 13166
10161 Park Run Drive
Suite 150
Las Vegas, Nevada 89145
(725) 239-8413
adam@lextecnica.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EVERYSPACE CONSTRUCTION, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ENCOR SOLAR, LLC, a Utah limited liability company; LUMIN8 HOLDINGS, LLC dba ASCENT VENTURES, a Utah limited liability company; ANGI INC., a Delaware corporation,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT** |

Plaintiff, EVERYSPACE CONSTRUCTION, LLC a/k/a VEGAS TRIM LIGHT, ("EverySpace" or "Plaintiff"), by and through its counsel of record, Lex Tecnica, Ltd., hereby sues Defendants, ENCOR SOLAR, LLC ("Encor"), LUMIN8 HOLDINGS, LLC dba ASCENT VENTURES ("Lumin8") and ANGI INC. ("Angi") for fraud, conspiracy, deceptive trade practice, and other forms of disreputable conduct, wherein the parties, either alone or in concert, to use Plaintiff's contractor license number without permission and misrepresent the source and quality of goods and services offered by Defendants, to earn millions of dollars of business in Nevada rooftop repairs, upgrades and solar sales, to deceive the public, and to withhold millions in profit from Plaintiff, all for the Defendant's unjust enrichment, as follows:

/ / /

**JURISDICTION AND VENUE**

1. The United States District Court for the District of Nevada has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy far exceeds $75,000.00, exclusive of interest and costs.

2. Many of the acts and events at issue in this complaint involve and relate to conduct and controversies that occurred in Clark County, Nevada. Defendants participated in, and/or continue to participate in, the activities that are at issue in this matter, which activities occurred in Clark County, Nevada. Additionally, Plaintiff is a duly licensed contractor organized under the laws of the state of Nevada. Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

3. Plaintiff, EverySpace is, and at all relevant times was, a Nevada limited liability company doing business in Clark County, Nevada holding a B-2 contractor's license issued by the Nevada State Contractors Board ("NSCB") as authorized and regulated by Nevada law.

4. Defendant, Encor is, and at all relevant times was, a Utah limited liability company doing business in Clark County, Nevada. Upon information and belief, all of the members of Encor Solar, LLC are citizens of the state of Utah or the state of California.

5. Defendant, Lumin8 is, and at all relevant times was, a Utah limited liability company doing business in Clark County, Nevada as Ascent Ventures. Upon information and belief, all of the members of Lumin8 Holdings, LLC are citizens of the state of Utah.

6. Defendant, Angi is, and at all relevant times was, a Delaware company doing business in Clark County, Nevada.

/ / /

/ / /

**FACTUAL ALLEGATIONS**

**A.     Defendant Encor and Lumin8 Background**

7.     Encor is a solar panel sales and marketing company based out of Lehi, Utah, with locations in 17 states, including Nevada.

8.     On its website, Encor states that is in the top 10% of Inc. 5000's list of fastest growing privately held companies in the United States, at number 429.

9.     Furthermore, on its website, Encor brags of awarding its huge workforce of top performers and their family and friends with all-expenses paid trips to all-inclusive beachfront resorts where employees receive luxurious gifts at awards ceremonies.

10.     In 2022, Encor allegedly earned approximately $100,000,000 in gross sales.  From 2016 to2019, Encor had a three-year growth rate of 4,374%.

11.     Encor does not have a contractor's license in Nevada, but instead per Nevada law, must partner with a licensed contractor to operate in Nevada.

12.     Lumin8 is the parent company of Encor and describes itself as a "portfolio of diverse companies owned by a group of successful entrepreneurs."

13.     The same actors that founded and operate Lumin8 are those that founded and operate Encor, and for all intents and purposes, Lumin8 has held itself out as Encor, and Encor as Lumin.8

**B.     Defendant Angi's Background**

14.     Angi, formerly ANGI Homeservices, Inc., is an internet company formed in 2017 by the merger of Angie's List and HomeAdvisor. It is an online network and lead generation provider, "connecting verified contractors and homeowners."

15.     Angi charges businesses for sales leads.

16.     Angi is publicly traded on Nasdaq as ANGI with revenue in excess of $1 billion and net income in excess of $77 million.

3

17. Angi's website states that whether "routine maintenance and repairs to dream home renovations, we can help with any project — big or small."

18. Angi further boasts that it will "connect you with top-quality pros built on a foundation of **verified** reviews to turn your projects imagined into projects well done. Only now, it is so much simpler as we develop technology to truly transform how you care for your home. Big or small, we'll help you get the job done right, guaranteed." (Emphasis added).

19. To become a listed contractor with Angi's, businesses must undergo a thorough background check, and application process, to prove they are operating legally.

20. According to Angi's website, to become "Angi Certified…businesses with at least one review must maintain an average rating of 3 stars or higher. The business's owner, principal, or relevant manager must also uphold all applicable state and local licenses…."

21. Furthermore, according to Angi's website, even though a contractor's information regarding licensing is self-reported, Angi's "Trade Licensing Department routinely checks licensure for accuracy and contacts providers who have missing and outdated information."

22. In other words, Angi's tells the public that it verifies the lawfulness of its listed contractors and either turned a blind eye to Encor's fraud, and conspiracy to misappropriate Plaintiff's identity and licensing information and deceive the Nevada public or was complicit in it.

**C.    EverySpace's Involvement with Defendants and Defendants' Fraudulent Angi's Postings.**

23. In or about June 2019, Plaintiff was introduced to Douglas Hatch, the Chief Operations Officer (COO) of Encor, at which time Plaintiff was invited to work on several Encor projects, generally to install attic insulation in homes where Encor had sold and installed solar systems.

/ / /

4

24. Shortly thereafter, Plaintiff began working with Encor to install attic insulation, and enhance roofs in houses where Encor sold solar systems, and to make homes more energy efficient.

25. In or about October 2021, Douglas Hatch introduced Plaintiff to Brian Hammond, Encor's Director of its Roofing Installation Division. Also at this time, Mr. Hatch asked Plaintiff to begin installing roofs for Encor. While the parties discussed potentially partnering, Encor refused, and at no time told Plaintiff that they would be using Plaintiff's license.

26. Encor never paid Plaintiff for its license as required by law.

27. Encor never gave Plaintiff an ownership position in Encor as required by law.

28. Upon information and belief, thereafter, Encor created an Angi's profile using Plaintiff's Nevada contractor's license number and business details, effectively stealing Plaintiff's identity, good will, name, and reputation, *without Plaintiff's permission and knowledge*.

29. This was in clear violation of NRS 624.260(5).

30. Even so, Encor began selling rooftop solar systems per month in Nevada.

31. When selling a rooftop solar system, Encor also sold new roofs to the homeowner and then directed Plaintiff to install the new roofs at the homes, never disclosing to Plaintiff or the public that Plaintiff was not the contractor or partner as required by NRS 624.260(5).

32. During this period of time, Defendants used Angi's platform to unlawfully and inaccurately display Plaintiff's Nevada contractor's license number, as Defendant Encor's.

33. Even after raising concerns with Encor's legal counsel, and sending a cease and desist letter, Encor's current Angi's profile still unlawfully lists Plaintiff's Nevada contractor's license number as Encor's own license information.

34. Since the time Encor created its Angi's profile, Angi has either knowingly, or negligently failed to verify the accuracy of the information provided by Encor and/or Lumin8 or take any steps to discover the fraudulent use of Plaintiff's license information.

35. Angi's failure to verify any of Encor's information has misappropriated Plaintiff's business name, likeness, image, good will, and license, and has defrauded public customers and caused damage to Plaintiff.

36. This calculated and deceptive misappropriation, fraud, conspiracy, and negligence unjustly enriched Defendants since at least 2021 to the tune of millions of dollars.

37. What's most troubling is that this is not Encor's first offense, and when Plaintiff confronted Encor, they refused to correct the error, downplayed the violation of the law, and threatened to withhold work from Plaintiff if they complained.

38. Such abuse soils and taints the entire contractor industry and harms Nevada families.

**D. Defendants Approach Plaintiff About Becoming a Qualified person for Encor Only Because One of its Customer's Reported Encor to the Nevada State Contractor's Board**

39. Based upon information and belief, in or about January 2022, Encor sold a roof top solar system to a customer in Nevada ("Customer 1," name withheld for privacy purposes).

40. Based upon information and belief, Customer 1 became concerned when he was not able to find Encor listed with the Nevada State Contractor Board ("NSCB").

41. Based upon information and belief, as a result of Customer 1's concern, the NSCB initiated an investigation into Encor.

42. Based upon information and belief, as a result of that investigation, the NSCB issued a citation to Encor for operating in Nevada without a valid contractor's license.

43. In or about February 2022, as a result of the NSCB's investigation, Encor approached Plaintiff and began negotiations to use Plaintiff's contractor's license so that Encor could secure payment from customers like Customer 1.

44. Unbeknownst to Plaintiff, Encor had been using Plaintiff's contractor's license with Angi and in Encor's contracts for years.

6

45. Encor employees Douglas Hatch and Brian Hammond began negotiations with Plaintiff to become Encor's qualified person.

46. A "qualified person" is the person listed with the NSCB who meets the experience and examination requirements for the license. It requires years of experience, after a robust qualification process, separate insurance, bonding, and other requirements to protect Nevada consumers. It is not an easy or cheap task to become a contractor.

47. As such, a qualified person is required for every classification on each license issued by the NSCB.

48. Pursuant to NRS 624.260(5), a person may act as a qualified person for more than one active license <u>only if</u> one of the following conditions exists: (a) One person owns at least **25 percent** of each licensee for which the person qualifies; or (b) One licensee owns at least 25 percent of the other licensee.

49. No agreement was ever reached authorizing Encor to use Plaintiff's contractor license or business identity, nor was any business arrangement or venture ever entered. Despite this fact, Encor continued to display Plaintiff's license information on Angi's, *without* Plaintiff's consent or knowledge, since at least 2022.

50. In or about February 2023, Plaintiff became aware of another contractor that had terminated its business relationship with Defendants; but Encor continued to use the contractor's license without the contractor's knowledge.

51. In or about March 2023, Plaintiff had a conversation with Brian Hammond about Encor's work in Utah with a Utah roofing contractor, NB Roofing. Hammond indicated that NB Roofing's prices were too high and that Encor was using a different contractor; despite continuing to use the NB Roofing's license on their contracts and the Utah State website.

///

52. According to the Utah Contractors Board, as posted on the state website, Encor was using NB Roofing's license information and qualified employees. When asked by Plaintiff if NB Roofing was being paid for this arrangement, Hammond stated "I don't need you rocking the boat on this one. They (meaning NB Roofing) doesn't know we are installing jobs therefore we have not paid them."

53. Later that same month, in March 2023, another Encor customer ("Customer 2", name withheld for privacy purposes) purchased a roof top solar system from Encor. Plaintiff installed the new roof sold by Encor in connection with Encor's sale and installation of the new solar system.

54. After completing the installation of the roof, Customer 2 requested that Plaintiff review his contract to ensure that he received everything he paid for. The contract Customer 2 presented to Plaintiff intentionally misrepresented Encor's relationship with Plaintiff, stated that Encor was a division of Plaintiff, and used Plaintiff's license number.

55. Plaintiff was shocked.

56. Encor intentionally created a fraudulent contract claiming that Encor is the "sales division" of Plaintiff, using Plaintiff's Nevada contractor's license and identifying Plaintiff's liability insurance company – all to manufacture a false business relationship that solely enriched Encor and Lumin8.

57. Encor has admitted to intentionally using Plaintiff's contractor license without permission to unjustly enrich itself.

58. Indeed, all of Encor's millions in profits made with Plaintiff's license in Nevada were fraudulently obtained, *without* consent from or compensation to Plaintiff.

59. Encor has admitted it intentionally and fraudulently misrepresented its relationship with Plaintiff to the public and to clients.

/ / /

60. Encor has created fraudulent contracts using Plaintiff's license number and name to sell Encor's services to unsuspecting clients.

61. To this day, Encor continues to list Plaintiff's contractor's license on Angi's.

62. This is true despite Plaintiff's demands to Defendant to stop such fraud.

63. These representations were made by the Defendants on a regular basis to individual customers and the public throughout Nevada and wherever Defendants conducted business across the country, which presently is 17 states.

64. Plaintiff is very concerned that Defendants' actions are continuing to not only damage Plaintiff, but also the Nevada public.

65. Encor's unlawful conduct and fraud has exposed Plaintiff to an unquantifiable amount of risk and liability – and has withheld hundreds of thousands of dollars (if in revenue from Plaintiff and millions of dollars of ownership interest in Encor's activities throughout the nation, as required by NRS 624.260(5).

66. Despite repeated demands to cease using Plaintiff's license and related information, Encor and Lumin8 chose to continue their pattern and practice of deception, misrepresentation, and intentional violation of law.

### FIRST CLAIM FOR RELIEF

(*Temporary Restraining Order, Preliminary and Permanent Injunctions*)

**All Defendants**

67. Plaintiff hereby incorporates by reference all allegations contained in all the preceding paragraphs as if fully set forth herein.

68. Pursuant to FRCP 65 and NRS 33.010, a preliminary injunction may be issued where it appears that the Plaintiff is entitled to the relief demanded in the Complaint.

/ / /

69. Unquantifiable and irreparable harm has already occurred because Defendants have used and continue to use Plaintiff's Nevada contractor's license in Encor's contracts and further allowed it to be listed, unverified, with Angi.

70. Such unlawful use and continued uses of Plaintiff's contractor's license has and continues to cause significant damage to Plaintiff, its license, and its bond.

71. Plaintiff seeks a temporary restraining order and a preliminary and then permanent injunction restraining Defendants, their agents, officers, members, employees, or representatives, from engaging in or performing directly or indirectly any of the following acts:

   a. Engaging in any business with Plaintiff's Nevada contractor's license;
   b. Listing Plaintiff's Nevada contractor's license on Angi's
   c. Doing any act which will, or which will tend to, impair, defeat, divert, prevent, or prejudice Plaintiff.

72. Because of Defendants' actions and/or inactions, Plaintiff has had to retain legal counsel to prosecute this action, and Plaintiff is entitled to reasonable costs and attorney fees incurred herein.

### SECOND CAUSE OF ACTION

**(Unjust Enrichment)**

**Against All Defendants**

73. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

74. Plaintiff conferred a substantial benefit upon Defendants based upon their representations that they would enter into a business relationship with Plaintiff. Defendants then fraudulently benefitted from Plaintiff's information, business identity and even its contractor's license.

/ / /

75. Given the nature of the benefit Plaintiff conferred on Defendants and Defendants public description of their profits, it would be inequitable to allow Defendants to accept and retain this benefit without repayment to Plaintiff for the full value thereof.

76. Defendants accepted and retained this benefit.

77. To date, Defendants have failed and/or refused to pay Plaintiff the full value of this benefit and have thus been unjustly enriched in an amount to be proven at trial in this matter.

78. As a result of the foregoing, Plaintiff has been damaged in a sum which far exceeds the jurisdictional minimum of $75,000.00, in an amount that will be determined at a trial of this matter.

79. As a further result of Defendants' conduct, Plaintiff has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

## **THIRD CAUSE OF ACTION**

**(Fraudulent Inducement)**

**Against Encore and Lumen8**

80. Plaintiff repeats and realleges each of the foregoing allegations as though fully set forth herein.

81. Defendants made false representations to Plaintiff beginning in April of 2022 and through the present day, that Defendants would be entering into a contract or business relationship. Negotiations commenced but were stopped by Defendants. However, Encor then used Plaintiff's contractor's license information and business identity with the public and customers claiming false business relationships.

82. These representations were made to Plaintiff solely so as to secure Plaintiff's business identity and contractor's license information. Defendants knew the representations were false because

11

Defendants were intentionally using Plaintiff's contractor's license numbers and business identity with the public and customers claiming false business relationships.

83. Defendants intended to induce Plaintiff into providing its contractor's license numbers and business identity by making the foregoing misrepresentations. Plaintiff justifiably relied on these representations and provided its information to Defendants to Plaintiff's detriment.

84. Plaintiff has been exposed to an unquantifiable amount of risk and liability.

85. As a result of the foregoing, Plaintiff has been damaged in a sum which far exceeds the jurisdictional minimum of $75,000.00, in an amount that will be determined at a jury trial of this matter.

86. Defendants' conduct was intentional and done willfully and maliciously, and with conscious disregard for the rights of Plaintiff, justifying an award of exemplary and punitive damages.

87. As a further result of Defendants' conduct, Plaintiff has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**(Fraudulent Misrepresentation/Fraud)**

**Against Encore and Lumin8**

88. Plaintiff repeats and re-alleges each of the foregoing allegations and facts from prior claims, as though fully set forth herein.

89. Defendants made false and material representations repeatedly to Plaintiff to obtain Plaintiff's contractor's license number and business identity, and other details necessary to act as Plaintiff, and to use Plaintiff's labor, without permission.

/ / /

/ / /

12

90. Defendant did so without following Nevada law, which requires giving Plaintiff ownership interest in Encor business as required by Nevada law - all to fraudulently claim a business relationship with Plaintiff to the public and customers so as to profit therefrom.

91. Encor created and used fraudulent contracts with Plaintiff's contractor's license number and name – but without Plaintiff's permission or knowledge – to sell Encor's services to unsuspecting clients.

92. Encor hid the contracts from Plaintiff and misrepresented the nature of the deals with the Plaintiff. These representations were made by Defendants to Plaintiff on a regular basis about individual customers, wherein Defendant told Plaintiff that it was using another contractor's license, and only needed Plaintiff's labor for the work with these customers.

93. Defendants knew their representations were false or, at a minimum, knew that they did not have a sufficient basis for making the representations because Defendants did not have the legal business relationship necessary to make such representations. Plaintiff never had any indication that Defendants were making false representations.

94. Defendants also knew that Plaintiff would rely upon the false representation that Defendants were using another contractor's license, and only needed Plaintiff's labor, all the while representing to the public that Encor was a division of Plaintiff or using Plaintiff's contractor's license.

95. Further, now that it has been discovered, Defendants have admitted this behavior on multiple occasions to Plaintiff, including in text and email – and simply downplayed the severity or consequence of the fraud. Encor has also admitted it intentionally and fraudulently misrepresented their relationship with Plaintiff to the public and customers.

/ / /

/ / /

13

96. As a result of the foregoing, Plaintiff has been damaged in a sum which far exceeds the jurisdictional minimum of $75,000.00, in an amount that will be determined at a jury trial of this matter.

97. Defendants' conduct was intentional and done willfully and maliciously, and with conscious disregard for the rights of Plaintiff, and is ongoing even today despite Plaintiff's complaints, justifying an award of exemplary and punitive damages.

## FIFTH CAUSE OF ACTION

**(Negligent Misrepresentation)**

**All Defendants**

98. Plaintiff repeats and re-alleges each of the foregoing allegations and facts pled above as though fully set forth herein.

99. Defendants made false and material representations repeatedly to Plaintiff so that they could obtain Plaintiff's contractor's license number and business identity, and keep Plaintiff in the dark, all to defraud Plaintiff, prevent them from the 25% ownership interest owed to Plaintiff.

100. Defendants used their false representations to induce Plaintiff to provide its contractor's licenses and business identity so that Defendants could profit directly therefrom throughout the United States.

101. Defendants knew their representations were false, or, at a minimum, that they did not have a sufficient basis for making the representations because Defendants did not have the legal business relationship necessary to make such representations to the public or their customers. Plaintiff never had any indication that Defendants were making false representations.

102. Despite this knowledge, or what Defendants should have known, Defendants repeatedly represented a business relationship with Plaintiff in violation of the law and to the detriment of Plaintiff.

103. As a result of the foregoing, Plaintiff has been damaged in a sum which far exceeds the jurisdictional minimum of $75,000.00, in an amount that will be determined at a jury trial of this matter.

104. As a further result of Defendants conduct, Plaintiff has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

### SIXTH CAUSE OF ACTION

### (Deceptive Trade Practices – NRS 598 and NRS 41.600)

### All Defendants

105. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

106. NRS 41.600(1) allows an action to "be brought by any person who is a victim of consumer fraud."

107. NRS 41.600(2)(e) defines consumer fraud as a "deceptive trade practice as defined in NRS 598.0915 to NRS 598.0925, inclusive."

108. NRS 598.0915, NRS 598.0917, and NRS 598.0923 require that the person do the act in their business.

109. Here, Defendants were acting in their business when they made false representations to Plaintiff and to the public about the relationship with the Plaintiff.

110. Defendants falsely represented to Plaintiff that they would enter into a business relationship with Plaintiff.

111. As set forth extensively herein, Defendants' representations were false and were made intentionally to deceptively represent that the Plaintiff and Defendants were in a business relationship so that Defendants could portray to the public and customers that they were in fact licensed.

///

112. NRS 598.0915(5) defines deceptive trade practice as a person in their business that knowingly "makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith." Here, Defendants' false representations were made repeatedly and systematically to the Plaintiff, public and to customers to misrepresent the nature, quality, source, and identify of the provider of the goods and services provided by Defendants.

113. This activity was intentional, as Defendant Encor has been censured before and told to cease desist by Plaintiff, and continues to engage in the misconduct and deception.

114. Defendants knew that no business relationship existed with Plaintiff, knew that Defendants had no right to use Plaintiff's contractor's license number and business identity.

115. NRS 598.0915(15) defines deceptive trade practice as a person in their business that knowingly "makes any other false representation in a transaction." Defendants knowingly made false representations to thousands if not tens of thousands of Nevada customers regarding the so called relationship with Plaintiff, using Plaintiff's identity, good will, license number, and name.

116. NRS 598.0917(2) defines deceptive trade practice as a person in their business that employs "bait and switch" advertising, "which consists of an offer to sell or lease goods or services which the seller or lessor in truth may not intend or desire to sell or lease, accompanied by ... Disparagement in any material respect of the advertised goods or services or the terms of sale or lease."

117. Defendants employed a "bait and switch" scheme with Plaintiff, promising a business relationship with Plaintiff as the contractor, when in fact it was with Defendant as an unqualified, unlicensed, and unlawful contractor.

/ / /

118. Defendants admitted to this behavior on numerous occasions as set forth herein, and refuse to stop such unlawful conduct.

119. NRS 598.0923(1)(a) defines deceptive trade practice as a person in their business that knowingly conducts their business "without all required state, county or city licenses."

120. Upon information and belief, Defendants do not have the required state, county or city licenses as required by Nevada law – and have admitted to such unlawfulness and deceptiveness.

121. Defendants not only failed to disclose that they did not have these necessary licenses but went to extravagant and unlawful means to secure Plaintiff's contractor's license number and business identity to intentionally circumvent Nevada law.

122. By failing to disclose to Plaintiff that Defendants fraudulently misused Plaintiff's business information Defendants failed to disclose a material fact to Plaintiff.

123. NRS 598.0918(6) defines deceptive trade practice as a person that "during a solicitation by telephone or text message or during a sales presentation, he or she: Defrauds a person of any valuable thing, wrongfully obtains from a person any valuable thing or otherwise causes harm to a person by knowingly causing, directly or indirectly, any service used in connection with a voice service or text messaging service to identify the caller or sender of the text message to display inaccurate or misleading information."

124. Here, Defendants defrauded Plaintiff and convinced Plaintiff to provide its business identity with no intention to enter into a valid business relationship with Plaintiff.

125. Defendants violated Nevada state law by, among other things, operating their business in the state of Nevada without obtaining the proper licenses.

126. Additionally, Angi's with Encor and Lumin8, have worked in concert to create a false representative legitimacy to Defendants, by using Plaintiff's identity, name, likeness, goodwill, and license from at least 2022, to enrich themselves with millions in revenue.

17

127. For the foregoing reasons, Plaintiff and the public are victims of Defendants' consumer fraud pursuant to NRS Chapter 598 and NRS 41.600.

128. Moreover, NRS 598 and 41 all Plaintiff to bring this suit as a private right of action to protect the public from Defendants deceptive trade practices and fraud.

129. As a result of the foregoing, Plaintiff has been damaged in a sum which exceeds the jurisdictional minimum of $75,000.00, in an amount that will be determined at a jury trial of this matter.

130. As a further result of Defendants' conduct, Plaintiff has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**

**(Deceptive Trade Practices – NRS 598 and NRS 41.600)**

**All Defendants**

131. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

132. Defendant intentionally misappropriated Plaintiff's name, likeness, image, goodwill and license number to perpetuate the fraud and deceptive trade practices.

133. Since 2022, Defendant used Plaintiff's name, license number and business information to secure business with Angi's list.

134. Defendants did this to sidestep the law, including the requirement that they obtain their own contractor's licensing, or give 25% of their business to Plaintiff, all to unjustly enrich themselves.

135. Angi's list was complicit or implicit in this misappropriation and used their platform to repeat and perpetuate the misappropriation to their financial benefit and Plaintiff's detriment.

/ / /

18

136. This concerted misappropriation impacted customers throughout Nevada, and without on information and belief, to over 17 states.

137. This misappropriation was perpetuated to create a false sense of legitimacy and legality, to generate revenue for Defendants.

138. As a result of the foregoing, Plaintiff has been damaged in a sum which far exceeds the jurisdictional minimum of $75,000.00, in an amount that will be determined at a jury trial of this matter.

139. As a further result of Defendants' conduct, Plaintiff has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. General, compensatory, expectation, and consequential damages in an amount to be determined at trial, but in any event, far greater than the jurisdictional minimum of $75,000.00;

2. Pre and post judgment interest;

3. Punitive damages;

4. Costs and attorney's fees including, but not limited to, to those provided pursuant to NRS 41.600(3)(c) and NRS Chapter 598;

5. Injunctive relief permanently enjoining use of Plaintiff's intellectual property including their name, likeness, image, good will, and license number, and other injunctive or equitable relief necessary to stop further damage to Plaintiff and the public,

6. For any other relief that the Court deems appropriate.

///

///

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 14th day of July, 2023.

**LEX TECNICA LTD**

/s/ Adam R. Knecht
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413
adam@lextecnica.com
*Attorneys for Plaintiffs*